## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KALIEGH SMITH**                                           **CIVIL ACTION**

**VERSUS**                                                  **NO. 22-1550**

**JASON WILLIAMS et al.**                                   **SECTION: "G"(4)**


## <u>ORDER AND REASONS</u>

In this litigation, Plaintiff Kaliegh Smith ("Plaintiff") brings a *Monell* claim against Jason Williams, in his official capacity as the District Attorney for Orleans Parish ("Defendant").[1] Plaintiff alleges that the Orleans Parish District Attorney's Office ("OPDA") secured his wrongful conviction in violation of his constitutional rights by withholding material exculpatory evidence in violation of its obligations under *Brady v. Maryland*.[2] Before the Court is Defendant's Motion to Dismiss.[3] Defendant argues that OPDA cannot be held liable as a "person" subject to suit under 42 U.S.C. § 1983 for its policies causing the alleged constitutional violations because the district attorney and his assistants acted on behalf of the State of Louisiana throughout the course of prosecuting Plaintiff.[4] Plaintiff opposes the motion, arguing that the OPDA is a "person" subject to suit because it is a local government entity and not an arm of the State of Louisiana.[5] Having

---

[1] "Louisiana law does not permit a district attorney's office to be sued in its own name." A plaintiff bringing a *Monell* claim against the office must "be brought against the district attorney in his official capacity." *See, e.g.*, *Hudson v. City of New Orleans*, 174 F.3d 677, 680 (5th Cir. 1999). Plaintiff brings the instant suit against the current Orleans Parish District Attorney in his official capacity. Rec. Doc. 1 at 1.

[2] Rec. Doc. 1 at 1.

[3] Rec. Doc. 5.

[4] Rec. Doc. 5-1 at 8–9.

[5] Rec. Doc. 12 at 11.

considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court denies Defendant's motion.

## I. Background

Plaintiff brings a § 1983 claim against Defendant in his official capacity as the District Attorney for Orleans Parish.[6] Plaintiff alleges that Defendant and former Orleans Parish District Attorneys and their assistants acted as "final policymaker[s] . . . responsible for the unconstitutional policies or customs" causing OPDA's failure to fulfill its obligations under *Brady*.[7] In December 2007, a grand jury indicted Plaintiff on one count of second-degree murder.[8] A non-unanimous jury found Plaintiff guilty of second-degree murder on February 6, 2010.[9] Plaintiff argues that OPDA withheld material exculpatory evidence regarding the credibility of the State's primary witness and "the possibility that a specific third-party may have been involved in or responsible for the offense."[10] According to the Complaint, in May 2021, "OPDA confessed to the *Brady* violations in resolution of [Plaintiff's] application for post-conviction relief."[11] On May 27, 2021, the Orleans Parish Criminal District Court vacated Plaintiff's conviction, and on June 14, 2021, the OPDA dismissed the charges.[12] Plaintiff was released from custody after nearly fourteen years in prison.[13]

---

[6] Rec. Doc. 1.

[7] *Id.* at 2, 5, 11–15.

[8] *Id.* at 2.

[9] *Id.*

[10] *Id.* at 14.

[11] *Id.* at 3.

[12] *Id.* at 4.

[13] *Id.*

Plaintiff alleges that OPDA "maintained an unconstitutional unwritten policy, practice, custom, and/or usage of failing to disclose favorable information to defendants."[14] Plaintiff brings this suit against Defendant, the current Orleans Parish District Attorney, in his official capacity, for these alleged constitutional violations committed by OPDA during the state criminal proceedings.[15]

On August 5, 2022, Defendant filed the instant motion to dismiss.[16] On September 22, 2022, the Court granted Plaintiff's unopposed second motion to continue the submission date on the instant motion.[17] On October 11, 2022, Plaintiff opposed the motion.[18] On October 18, 2022, the Court granted Defendant's motion to continue the submission date.[19] On October 26, 2022, the Court granted Defendant's motion for leave to file his reply brief.[20]

## II. Parties' Arguments

### A.   Defendant's Arguments in Support of Motion to Dismiss

Defendant argues that Plaintiff has failed to state a claim under § 1983 because OPDA acted on behalf of the State of Louisiana—and not a local government entity—in creating the policies regarding disclosure of material exculpatory evidence.[21] Defendant asserts that recent Fifth Circuit jurisprudence forecloses Plaintiff's § 1983 claim because Louisiana district attorneys

---

[14] *Id.* at 23.

[15] *See id.*

[16] Rec. Doc. 5.

[17] Rec. Doc. 10.

[18] Rec. Doc. 12.

[19] Rec. Doc. 14.

[20] Rec. Doc. 16.

[21] Rec. Doc. 5-1 at 8–9.

act on behalf of the State of Louisiana in the execution of their duties.[22] Defendant primarily relies on the Fifth Circuit's en banc decision in *Daves v. Dallas County*,[23] which held that county judges who had promulgated a misdemeanor bail schedule were acting on behalf of the State of Texas, not Dallas County, when developing the bail schedule.[24] Defendant also points out that, following *Daves*, the Fifth Circuit affirmed the dismissal of § 1983 claims brought against the Dallas District Attorney's Office in *Arnone v. Dallas County*[25] because it found that "the district attorney acted as a state—not county—policymaker in promulgating or acquiescing to" a policy requiring polygraphs for individuals in its deferred adjudication program.[26] Thus, Defendant asserts that this Court must dismiss Plaintiff's claim because OPDA acted as a policymaker on behalf of the State instead of the municipal entity.[27]

Defendant further asserts that the Fifth Circuit's Eleventh Amendment jurisprudence finding that OPDA is a municipal actor and not "an arm of the [S]tate of Louisiana" is inapplicable in § 1983 cases following the Fifth Circuit's en banc decision in *Daves v. Dallas County*.[28] Defendant also argues that the Fifth Circuit's opinion in *Burge v. Parish of St. Tammany* did not "squarely answer the question presented in this motion, and, in any event, is undermined by the en

---

[22] *Id.* at 1.

[23] 22 F.4th 522 (5th Cir. 2022).

[24] Rec. Doc. 5-1 at 4 (citing *Daves*, 22 F.4th at 522).

[25] 29 F.4th 262, 266 (5th Cir. 2022).

[26] Rec. Doc. 5-1 at 6 (citing *Arnone*, 29 F.4th at 268).

[27] *Id.* at 13.

[28] *Id.* at 14–15 (citing *Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999); *Daves*, 22 F.4th at 522).

banc decision in *Daves*."[29] Defendant avers that these prior cases involved "'a different test[]' that 'can be misleading'" if applied to determine "whether an official was acting for a state or a local government" for the purposes of *Monell* liability.[30] Defendant asserts that Plaintiff has an adequate alternative remedy because his petition for compensation for his alleged wrongful conviction is currently pending in Orleans Parish Criminal District Court.[31]

Defendant argues that the criminal charges brought against Plaintiff in the instant case were brought on behalf of the State.[32] Additionally, Defendant further alleges that Plaintiff's claims against OPDA are "based on alleged acts and omissions in the course of his prosecution for murder," a state-law crime.[33] Defendant asserts that like in "*Arnone*, the Court must determine whether the alleged policies in this case are policies of the District Attorney's Office or policies of the State of Louisiana."[34] Defendant argues that like the county judges in *Daves* and the district attorney in *Arnone*, "[t]he District Attorney and any Assistant District Attorneys involved in [Plaintiff's] prosecution were acting as state officials representing the State of Louisiana."[35]

Defendant points out that the provision in the Louisiana Constitution establishing the office of local district attorneys falls under Article V, the Article governing the "Judicial Branch," and

---

[29] *Id.* at 16 (citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999); *Daves*, 22 F.4th at 522).

[30] *Id.* at 17 (quoting *Daves*, 22 F.4th at 537–40).

[31] *Id.* at 14.

[32] Rec. Doc. 5-1 at 8; *see State v. Kaleigh Smith*, 96 So. 3d 678, 682–83 (La. App. 4th Cir. 2012).

[33] Rec. Doc. 5-1 at 8; *see* Doc. No. 1 at 6–12.

[34] Rec. Doc. 5-1 at 9.

[35] *Id.*

not Article VI, the Article governing "Local Government."[36] Defendant avers that the "Louisiana Constitution also establishes the powers of district attorneys, including that a district attorney 'shall have charge of every criminal prosecution by the [S]tate in his district, be the representative of the [S]tate before the grand jury in his district, and be the legal advisor to the grand jury.'"[37] Thus, Defendant argues that the Motion to Dismiss should be granted in consideration of recent Fifth Circuit jurisprudence because Louisiana district attorneys and their assistants act on behalf of the State when prosecuting individuals for alleged violations of Louisiana law.[38]

**B.    *Plaintiff's Arguments in Opposition to Motion to Dismiss***

In opposition, Plaintiff argues that Louisiana law "explicitly indicate[s] that OPDA does not act as an arm of the state even when prosecuting state crimes."[39] Plaintiff contends that the Supreme Court's analysis in *McMillian v. Monroe County*[40] guides this Court's analysis and not the recent Fifth Circuit decisions of *Daves* and *Arnone*.[41] Plaintiff avers that under the three factors considered in *McMillian*, OPDA is a municipal actor and not an actor on behalf of the State when prosecuting individuals for alleged violations of state crimes.[42]

First, Plaintiff contends that Defendant's motion fails because the Louisiana Constitution does not vest any state power in the State's district attorneys by merely listing them in Article V, the relevant provision regarding the Judicial Branch, without an explicit grant of judicial or other

---

[36] *Id.* at 12.

[37] *Id.* at 12 (quoting La. Const. art. 5, § 26).

[38] *Id.* at 3, 18.

[39] Rec. Doc. 12 at 11.

[40] 520 U.S. 781 (1997).

[41] *Id.*

[42] *Id.* at 11–20.

6

state power.[43] Plaintiff argues that "district attorneys are not mentioned in the constitutional description of any other branch nor included amongst the enumerated officials in whom those branches' powers are vested."[44] Plaintiff contrasts this to *Daves* where the Fifth Circuit found that the Texas Constitution expressly vested judicial powers in the county courts, the acting defendant-policymakers in that case.[45]

Second, Plaintiff argues that OPDA is a municipal entity because the Louisiana Legislature's promulgation of several provisions of the Louisiana Revised Statutes "demonstrate[] [its] clear intent that district attorneys do not act on behalf of the [S]tate."[46] Plaintiff asserts that Louisiana Revised Statutes §§ 42:1441.1, 42:1441.2, which govern limitation of liability, provide that the State "is not vicariously liable for 'parish officials' . . . [and] specifically nam[es] district attorneys in the list of parish officials."[47] Plaintiff further argues that Louisiana Revised Statute § 13:5108.1, which governs the indemnification of state officers subject to lawsuits for civil rights violations resulting from the "performance of the duties of his office or employment," excludes district attorneys and other local officers from coverage.[48] Plaintiff points out that a Louisiana appellate court held that these statutes establish that "the District Attorney's Office is not the State and the State is not liable for the acts of the District Attorney or his employees."[49]

---

[43] *Id.* at 12.

[44] *Id.* at 12–13.

[45] *Id.* at 13–14.

[46] *Id.* at 14.

[47] *Id.*

[48] *See* La. R.S. § 13:5108.1(E)(3)(b).

[49] Rec. Doc. 12 at 15 (quoting *Gibson v. State*, 94-476 (La. App. 4th Cir. 10/27/94); 644 So.2d 1148, 1150).

Third, Plaintiff argues that Orleans Parish, and not the State of Louisiana, can exert control over the acts of its district attorney.[50] Plaintiff avers that although both the State and Orleans Parish contribute to OPDA's budget, only the New Orleans Mayor and City Council can restrict or increase its "substantial budget contributions to reward and/or punish OPDA on an annual basis for particular policies or acts."[51] Plaintiff further argues that the Mayor and City Council "have utilized budget cuts for OPDA when dissatisfied with policies enacted by the District Attorney."[52] Thus, Plaintiff argues that this Court should deny Defendant's motion because OPDA is a municipal actor and not an arm of the [S]tate pursuant to the *McMillian* factors.[53]

Plaintiff further asserts that the factual findings established about OPDA and Louisiana district attorneys in the Fifth Circuit's prior Eleventh Amendment jurisprudence is applicable.[54] Plaintiff concedes that "state sovereign immunity under the Eleventh Amendment presents a different issue than [local government] liability under § 1983."[55]

Alternatively, Plaintiff argues that "if the Court were to find that Louisiana law does provide for the District Attorney to at times act as an arm of the state under *McMillian*," that Defendant may still be liable because "[t]he promulgation of the policy at issue in this case was not an instance of Defendant performing a state function over which Louisiana has exclusive purview."[56] Plaintiff asserts that the Fifth Circuit has held that "a municipality only acts on behalf

---

[50] *Id.* at 16–17.

[51] *Id.* at 17.

[52] *Id.* at 18.

[53] *Id.* at 20.

[54] *Id.* at 21–22.

[55] *Id.* at 21.

[56] *Id.* at 22.

of the [S]tate in creating a policy where the policy in question executes a state-specific function."[57]
Plaintiff avers that unlike *Daves* and *Arnone*, OPDA does not conduct any specific state function
in its policy of disclosing exculpatory evidence because "[u]nlike the right of bail [under Texas
law] in *Daves*, the disclosure of exculpatory evidence in criminal cases is not a right created" by
the Louisiana Constitution.[58] Therefore, Plaintiff asserts that this Court should deny the instant
motion because "Defendant did not perform an enumerated state function, and thus Defendant did
not act as an arm of the state in this case."[59]

## C.   *Defendant's Further Arguments in Support of Motion to Dismiss*

Defendant raises four arguments in his reply.[60] First, Defendant argues that the Louisiana
Constitution explicitly vests Louisiana district attorneys with power to act for the State in a
provision stating that a district attorney "shall have charge of every criminal prosecution by the
[S]tate in his district."[61] Defendant further argues that the Louisiana Supreme Court held in *Diaz
v. Allstate Insurance Co.*[62] that "[a] district attorney is a constitutional officer who serves in the
judicial branch and exercises a portion of the sovereign power of the [S]tate within the district of
his office."[63] Therefore, Defendant asserts that the Louisiana Constitution "unambiguously vests
district attorneys with power to act on behalf of the [S]tate."[64]

---

[57] *Id.* at 23.

[58] *Id.*

[59] *Id.* at 25.

[60] Rec. Doc. 15-2 at 1–2 (quoting La. Const. art. V, § 26).

[61] *Id.* at 2.

[62] 433 So. 2d 699 (La. 1983).

[63] *Id.*

[64] *Id.* at 3.

Second, Defendant argues that state legislation insulating the State from liability for the actions of district attorneys and other local actors cannot be interpreted to deprive district attorneys of their vested state powers.[65] Defendant asserts that Plaintiff's argument regarding the Legislature's restrictions of the doctrines of respondeat superior and indemnification of state officials or employees is erroneous because "[t]he question of whether an official is acting on behalf of the [S]tate is entirely separate . . . from the question of whether the [S]tate itself may be liable for the actions of that official."[66] In sum, Defendant avers that Louisiana law does not overrule the Louisiana Supreme Court's constitutional interpretation in *Diaz* "holding that Louisiana district attorneys serve in the judicial branch of the state government and exercise the sovereign power of the [S]tate."[67]

Third, Defendant asserts that OPDA is subject to direct control by the State of Louisiana and not Orleans Parish or the City of New Orleans.[68] Defendant contends that the issue of "'control' is of secondary importance . . . . [because] [t]he relevant question is whether an official is empowered to act on behalf of the [S]tate–not whether he is subject to control by some other state official when doing so."[69] Defendant further argues that OPDA is not subject to control by Orleans Parish or the City of New Orleans because the office is established in the Louisiana Constitution, while other actors subject to the City of New Orleans's control, like a City Attorney,

---

[65] *Id.* at 4.

[66] *Id.* at 4–5.

[67] *Id.* at 5.

[68] *Id.* at 6.

[69] *Id.*

are established by the Orleans Parish Home Rule Charter.[70] Defendant avers that the City Council's and Mayor's procedures for reducing OPDA's budget is merely an exercise of indirect control which the Supreme Court found unpersuasive in *McMillian*.[71] Thus, Defendant asserts that OPDA is an arm of the state because the State of Louisiana exercises control over Louisiana district attorneys.[72]

Lastly, Defendant argues that decisions and policies regarding the disclosure of evidence to criminal defendants "constitute an exercise of state power and are attributable to the [S]tate."[73] Defendant asserts that "discovery and disclosure are integral to criminal proceedings" and that the Fifth Circuit has stated that a prosecutor's disclosure decisions are "intimately associated with the judicial phase of the criminal process."[74] Defendant further argues that Plaintiff's assertion that prosecutors' disclosure obligations are not governed by Louisiana law is misguided given the provisions of the Louisiana Code of Criminal Procedure and the Rules of Professional Conduct that compel prosecutors to make routine disclosures of certain sources of evidence.[75]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[76] A motion to dismiss for failure to

---

[70] *Id.* at 7 (citing New Orleans Home Rule Charter, art. IV, § 4-106(1)).

[71] Rec. Doc. 15-2 at 9.

[72] *Id.*

[73] *Id.* at 10.

[74] *Id.* at 10–11.

[75] *Id.* at 11–12.

[76] Fed. R. Civ. P. 12(b)(6).

state a claim is "viewed with disfavor and is rarely granted."[77] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[78] "Factual allegations must be enough to raise a right to relief above the speculative level."[79] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[80]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[81] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[82] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[83] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[84] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[85] That is, the complaint must offer more than an "unadorned, the-defendant-

---

[77] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[78] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[79] *Twombly*, 550 U.S. at 555.

[80] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[81] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[82] *Iqbal*, 556 U.S. at 678–79.

[83] *Id.* at 679.

[84] *Id.* at 678.

[85] *Id.*

12

unlawfully-harmed-me accusation."[86] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[87] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[88]

## IV. Analysis

In *Monell v. Department of Social Services of the City of New York*, the Supreme Court held that plaintiffs may bring § 1983 claims against local government entities or officials for policies they promulgate.[89] A valid *Monell* claim requires "(1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose 'moving force' is the policy or custom."[90] The instant motion challenges the first element. "A policymaker is an 'official[] whose decisions represent the official policy of the local governmental unit.'"[91] The Fifth Circuit has declared that "[s]ometimes a policymaker wears more than one hat."[92] For instance, an official "sometimes acts for the county, and sometimes acts for another governmental entity, like the state."[93] However,

---

[86] *Id.*

[87] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[88] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[89] *Monell v. Dep't of Soc. Servs. Of City of N.Y.*, 436 U.S. 658, 690 (1978).

[90] *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (en banc) (citation omitted).

[91] *Arnone*, 29 F.4th at 266.

[92] *Id.*

[93] *Id.*

"only *county* [or local government] policymakers count for liability under *Monell*."[94] When a policymaker acts on behalf of both the state and local government, a court must "weigh state law and the policymaker's complained-of action" to determine "which entity is to blame."[95]

The central question at issue here is whether Louisiana district attorneys and their assistants operate on behalf of the State of Louisiana or as a local governmental unit in their practice of disclosing evidence to criminal defendants under *Brady*. In *McMillian v. Monroe County*, the Supreme Court examined whether a sheriff acted on behalf of the State of Alabama or the county when exercising his "final policymaking authority" in the area of law enforcement.[96] The *McMillian* court held that the sheriff had acted as a state policymaker.[97] The Supreme Court stated that its analysis was not "all or nothing," but instead asked "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue" under state law.[98] In analyzing Alabama law, the Supreme Court considered the plain text of the Alabama Constitution, the statutory provisions governing Alabama sheriffs, the legislative history underscoring those provisions, and the extent of control exercised by the State of Alabama and the County over the sheriff.[99]

---

[94] *Id.*

[95] *See id.*

[96] *McMillian*, 520 U.S. at 785.

[97] *Id.* at 783.

[98] *Id.* at 785–86.

[99] *Id.* at 787–89 (examining historical developments of the Alabama Constitution); *Id.* at 789–90 (analyzing the provisions of the Alabama Code governing sheriffs); *Id.* at 791–92 (evaluating which sovereign maintained control over the sheriff).

The Court must "identify the level of government for which an official was acting when establishing the policy that is relevant to the claims."[100] A determination "of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law."[101] Therefore, "*McMillian* holds [that courts must] examine function, not funding, when deciding whether an official is acting for the state or local government in a case brought pursuant to Section 1983."[102]

Two years after *McMillian*, the Fifth Circuit decided *Burge v. Parish of St. Tammany*.[103] In *Burge*, an individual sued a Louisiana district attorney and local sheriff and alleged that the officials violated their obligations under *Brady* during their efforts to secure his wrongful conviction.[104] Applying *McMillian*, the Fifth Circuit analyzed the Louisiana Constitution, Louisiana Revised Statutes, and prior tort cases and concluded that "a district attorney . . . is virtually an autonomous local government official" under Louisiana law.[105] The Fifth Circuit pointed out that "[s]ubject to a narrow, rarely invoked exception, the Louisiana Constitution provides that a district attorney has charge of every criminal prosecution by the State in his district, and is the representative of the State before, and legal advisor to, the grand jury."[106] Additionally, a Louisiana district attorney is constitutionally authorized to select assistants and "constitutionally

---

[100] *Daves*, 22 F.4th at 533 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

[101] *Id.* (quoting *McMillian*, 520 U.S. at 786).

[102] *Id.*

[103] *Burge*, 187 F.3d at 452.

[104] *Id.* at 457–58, 462.

[105] *Id.* at 469 (citing La. Const. art. V, §§ 26, 27; art. VI, §§ 5(G), 7(B), 25; La. Rev. Stat. §16:1, *et seq.*).

[106] *Id.* (citing La. Const. art. V, § 26(B)).

shielded from the effect of powers granted other local government entities."[107] Therefore, the Fifth

Circuit concluded that:

> [I]n a suit against a [Louisiana] district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of *Brady* material, a victory for the plaintiff imposes liability on the district attorney's office as *an independent local entity*.[108]

Ultimately, the Fifth Circuit found that the plaintiff's *Monell* claim failed on the merits against the

district attorney because no pattern of *Brady* violations existed prior to his case.[109] Therefore, the

Fifth Circuit affirmed the grant of summary judgment to the district attorney on that claim.[110]

      Defendant argues that the Fifth Circuit's opinion in *Burge v. Parish of St. Tammany* did

not "squarely answer[] the question presented in this motion, and, in any event, is undermined by

the en banc decision in *Daves*."[111] The Court disagrees with Defendant's characterization of *Burge*.

The 1999 decision by the Fifth Circuit clearly answers the issue presented in the instant motion

and finds that Louisiana district attorneys act as an independent local entity, not on behalf of the

State, in creating policies for disclosure of evidence to criminal defendants under *Brady*.

      *Burge* was decided by the Fifth Circuit in 1999, and Defendant contends that it is called

into question by the Fifth Circuit's 2022 en banc decision in *Daves* and the 2022 panel decision in

*Arnone*. In *Daves*, the Fifth Circuit, sitting en banc, held that county judges who had promulgated

a misdemeanor bail schedule were acting on behalf of the State of Texas, not Dallas County, when

---

[107] *Id.* (citing La. Const. art. V, § 26(a), art. VI, §§ 5(G), 7(B)).

[108] *Id.* at 470.

[109] *Id.* at 471–73 (analyzing the processes and procedures regarding evidence disclosure in the defendant-district attorney's office).

[110] *Id.* at 475–76.

[111] Rec. Doc. 5-1 at 16–17 (first citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999); and then citing *Arnone*, 29 F.4th at 270–72).

developing the bail schedule.[112] In *Arnone*, a Fifth Circuit panel held that the Dallas District Attorney acted as a state policymaker in creating policies requiring charged individuals to submit to polygraph testing because the Texas Constitution gives its district attorneys the role of representing the State in matters within their districts and the Texas legislature "a direct role in regulating both the scope of prosecutorial duties and compensation for district attorneys."[113]

As an initial matter, the Court notes that this analysis must be undertaken under Louisiana law.[114] Therefore, *Daves* and *Arnone* are not determinative because both of those cases involved interpretation of Texas law. Additionally, following *Daves* and *Arnone*, the Fifth Circuit has continued to apply *Burge* to claims brought against Louisiana district attorneys.[115] Accordingly, the Court finds that the Fifth Circuit's decision in *Burge* is instructive in this case. As in *Burge*, Plaintiff brings the same claim for a similar harm—arising out of alleged *Brady* violations— against a Louisiana district attorney.[116] Nevertheless, for completeness, the Court continues to examine the Louisiana Constitution and Louisiana Revised Statutes to examine whether Louisiana law still supports the same interpretation as the Fifth Circuit in *Burge*.

---

[112] *Daves*, 22 F.4th at 522.

[113] *Arnone*, 29 F.4th at 262.

[114] *Jett*, 491 U.S. at 737 ("Whether a particular official has 'final policymaking authority' is a question of state law.").

[115] *Kimble v. Jefferson Par. Sheriff's Off.*, No. 22-30078, 2023 WL 1793876, at *3 (5th Cir. Feb. 7, 2023) (per curiam) (quoting *Burge v. Par. of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999) ("For purposes of 'official capacity' suits under § 1983, the district attorney's office resembles other local government entities.")).

[116] *See Burge*, 187 F.3d at 468.

**A.**        ***Whether the Louisiana Constitution Vests State Power in Louisiana District Attorneys***

The Court turns to whether the Louisiana Constitution "supports that the district attorney acts for the state."[117] In Article V, § 1 of the Louisiana Constitution, the only explicit grant of state power, judicial power is vested in the Louisiana Supreme Court, courts of appeal, district courts and other courts authorized within the Article.[118] Article V, § 26(B) states that district attorneys and their assistants "shall have charge of every criminal prosecution by the [S]tate in his district [and] be the representative of the [S]tate before the grand jury in his district."[119] Additionally, a district attorney is constitutionally authorized to select assistants as authorized by law, and other personnel.[120] A district attorney is also constitutionally shielded from the effect of powers granted other local government entities.[121] Therefore, the Louisiana Constitution grants specific powers and duties to the district attorneys of this State. "These constitutional [] provisions indicate that a district attorney is the independent and final official policymaker for all of the administrative and prosecutorial functions of his office," as a wholly autonomous local government official.[122] However, this Court must look to state law as a whole to determine whether Louisiana district attorneys act for the State in the functions giving rise to this suit.[123]

---

[117] *Arnone*, 29 F.4th at 268.

[118] La. Const. art. V, § 1.

[119] La. Const. art. V, § 26(B).

[120] La. Const. art. V, § 26(A).

[121] La. Const. art. VI, §§ 5(G), 7(B), and 25.

[122] *Burge*, 187 F.3d at 469.

[123] The Fifth Circuit rejected an "all or nothing" test and specified that a Court must examine whether the alleged municipal policymaker acted on behalf of the State in the execution of the specific conduct challenged in the suit. *See Daves*, 22 F.4th at 536.

**B.** ***Whether Louisiana Law Clearly Establishes that Louisiana District Attorneys Act on Behalf of the State During Criminal Prosecutions***

The issue of whether Louisiana statutory law clearly establishes that Louisiana district attorneys act on behalf of the State in making evidentiary disclosure decisions is a much closer question.[124] Defendant avers that OPDA acts on behalf of the State of Louisiana in criminal prosecutions because the Louisiana Constitution states that Louisiana district attorneys "shall have charge of every criminal prosecution by the state in his district."[125] Defendant points out that the Louisiana Supreme Court held in *Diaz v. Allstate Insurance Co.* that "[a] district attorney is a constitutional officer who serves in the judicial branch and exercises a portion of the sovereign power of the state within the district of his office."[126] However, Defendant neglects to mention the effect of the Louisiana Legislature's 1984 and 1985 statutory amendments that overruled *Diaz*.[127]

In *Diaz*, the Louisiana Supreme Court considered whether Louisiana Revised Statute § 42:1441(A) shielded the State of Louisiana from liability for damages in tort caused by an employee of the district attorney.[128] The *Diaz* court held that § 42:1441 was unconstitutional but

---

[124] The Court notes that within this prong of its *McMillian* analysis, the Fifth Circuit in *Arnone* examined Texas case law and statutory law to make its determination. *See Arnone,* 29 F.4th at 269 & nn. 52, 55.

[125] Rec. Doc. 5-1 at 10.

[126] 82-2846 (La. 1983); 433 So. 2d 699, 700.

[127] *See Hudson v. City of New Orleans*, 174 F.3d 677, 686 (5th Cir. 1999). Additionally, the Louisiana Attorney General released numerous opinions which led to his ultimate conclusion that the legislative intent behind the 1984 and 1985 legislative actions to amend the indemnification and limitation of liability statutes clearly establishes that Louisiana district attorneys are considered employees of their respective parishes even though they may exercise some constitutional and statutory authority. *See, e.g.*, La. Atty. Gen Op. No. 90-104 (May 25, 1990) (concluding that district attorneys are employees of the parish which they serve); La. Atty. Gen. Op. No. 87-238 (July 1, 1987) (finding that the legislative amendments in 1984 and 1985 evidenced a shift of responsibility over actions of the district attorneys from the state level to the local level).

[128] *Diaz*, 433 So. 2d at 700.

19

nevertheless found that "a district attorney's employee is an employee of the state for purposes of" the indemnification statute codified as Louisiana Revised Statute § 13:5108.2.[129]

In 1984, a year after *Diaz*, the Louisiana Legislature adopted §§ 42:1441.1, 1441.2, and 1441.3, with each provision specifying limitations of liability on the State and its officers and employees for damages caused by local officials in the course of their duties.[130] § 42:1441.1 declares that master-servant liability "shall not extend or apply to . . . the State for the offenses and quasi-offenses of any person who is not expressly specified by R.S. 13:5108(A) to be an official, officer, or employee of the state entitled to indemnification" under the indemnification statute.[131] Louisiana Revised Statute § 42:1441.3(E) also provides that district attorneys "shall be separate political subdivisions."[132]

In 1985, the Louisiana Legislature also revised Louisiana Revised Statute § 13:5108.1(A) in response to the Louisiana Supreme Court's holding in *Diaz*. In its revised formulation, the statute provides that "[t]he state shall defend and indemnify a covered individual against any claims" arising from the individual's "performance of the duties of their office or employment with the state."[133] § 5108.1(E)(3)(b) expressly excludes Louisiana district attorneys and their employees from the definition of a "covered individual."[134] The provision includes Louisiana

---

[129] *Id.* at 701.

[130] *See Gibson v. State*, 94–476 (La. App. 4th Cir. 10/27/94), 644 So. 2d 1148, 1150.

[131] La. Rev. Stat. § 42:1441.1. The Court notes that the section is titled "Nonimposition of master-servant liability on state by Civil Code Article 2320 and other laws for torts of persons not designated state officials, officers, or employees by R.S. 13:5108.2."

[132] La. Rev. Stat. § 42:1441.3.

[133] Prior jurisprudence cites the indemnification statute as § 13:5108.2. However, the statutes were redesignated in 2015, with the contents of the indemnification statute now codified at §13:5108.1. *See* La. R.S.§ 40:1299.91 ("Redesignated to R.S. 13:5108.2").

[134] The Court notes that the legislative intent surrounding the state officer indemnification provisions presents vastly distinguishable facts from the Texas laws considered by the Fifth Circuit in *Daves* and *Arnone*. In those cases,

district attorneys and their staff in a list of local officers, including the sheriffs and clerks of municipal and district courts, who are not indemnified by the State in civil rights suits brought against them.[135]

Additionally, several intermediate appellate courts have found that the Louisiana Legislature's amendments to the indemnity and limitation of liability statutes evidence a strong legislative intent to designate Louisiana district attorneys as local officers that do not act for the State on the particular issue of their evidence disclosure policies and practices.[136] With this historical context, it cannot be said that Louisiana law empowers Louisiana district attorneys to make policy on behalf of the State in their *Brady* compliance functions. Furthermore, an analysis of the Louisiana Constitution, statutory law, and case law reaffirms this finding. Therefore, this Court finds that Louisiana statutory law and its historical developments designate that a Louisiana

---

the Fifth Circuit analyzed Texas statutory provisions with few references to the local officials at issue. *See, e.g.*, *Arnone*, 29 F.4th at 269 (reviewing the provisions governing compensation and duties of Texas district attorneys).

[135] "Covered Individual" does not include . . . . (b) District attorneys, sheriffs, assessors, clerks of district courts, coroners, justices of the peace, constables, mayor's courts, city courts, marshals, nor the officials, officers, or employees thereof." La. R.S. § 13:5108.1(E)(3)(b). The Court notes that the issues of indemnification and limitation of liability of the State and its Officers for the acts of local officials indicate that the Louisiana Legislature has expressed intent to designate Louisiana district attorneys as local policymakers because these provisions prevent Louisiana district attorneys from establishing *Brady* compliance policies on behalf of the State.

[136] *See, e.g.*, *Obermier v. State*, 606 So. 2d 937, 939 (La. App. 3 Cir. 1992). Defendant contends that these statutory amendments are insufficient to find that Louisiana district attorneys are local policymakers because the Supreme Court in *McMillian*, assigned "little weight" to the "several instances in the [Alabama] state code" where the sheriff, the alleged policymaker in that case, was listed among "county officials" or "county employees." 520 U.S. at 792 n.7. However, Defendant fails to credit the significant differences between the clearly expressed legislative intent underscoring the 1984 and 1985 amendments in Louisiana and the legislative developments in Texas and Alabama. In those instances, there were no significantly immediate departures from the previous interpretations regarding which sovereign, the state or municipality, that the local official policymakers operated for in the exercise of their duties. Defendant further argues that the Louisiana Legislature could not "overrule the Louisiana Supreme Court's constitutional interpretation in *Diaz* holding that Louisiana district attorneys serve in the judicial branch of the state government and exercise the sovereign power of the state." Rec. Doc. 15-2 at 5. However, this argument is not outcome determinative in the *McMillian* analysis, as *Daves*, *Arnone*, and *McMillian* all considered statutory law and case law to determine whether a certain officer acted on behalf of the State. *See, e.g.*, *Arnone*, 29 F.4th at 269.

district attorney acts as an autonomous local government official in the exercise of his evidence disclosure duties.[137]

### V. Conclusion

Considering the foregoing reasons, this Court finds that Louisiana law does not designate Louisiana district attorneys as state policymakers with respect to their decision making in evidence disclosure policies. Simply put, the Fifth Circuit held in *Burge* that Louisiana district attorneys act as autonomous local policymakers with respect to the policies and practices governing their compliance with *Brady*. Additionally, the Louisiana Legislature has clearly expressed intent to designate district attorneys as local policymakers following *Diaz*. This Court finds that the provisions of the Louisiana Constitution, Louisiana Code of Criminal Procedure, and the Louisiana Revised Statutes that address the role and compensation of district attorneys do not establish that they act on behalf of the State of Louisiana with regard to the functions at issue in this suit.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Failure to State a Claim[138] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this 28th day of February, 2023.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[137] *See Burge*, 187 F.3d at 469.

[138] Rec. Doc. 5.

22