**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KALEIGH SMITH, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO:   22-1550** |
| **JASON WILLIAMS** | **SECTION: "G" (4)** |

<u>**ORDER AND REASONS**</u>

Before the Court is a **Motion to Compel Production of Documents (R. Doc. 61)** filed by

Defendant Jason Williams, in his official capacity as Orleans Parish District Attorney ("OPDA"),

seeking to compel Plaintiff Kaleigh Smith to produce documents requested by OPDA in their First

Set of Requests for Production. The Motion is opposed. R. Doc. 62. The first hearing was

conducted on April 22, 2026. The second hearing was conducted on May 8, 2026. As a result of

the second hearing the Court ordered the parties to produce documents for *in-camera review*,

which they complied with. Now, the Court has conducted its *in-camera* review and issues the

following opinion.

   I.      <u>**Background**</u>

      **A. Factual Background**

   Kaleigh Smith Sr.[1] filed this suit pursuant to 42 U.S.C. § 1983, claiming that he was

wrongfully incarcerated in prison of fourteen (14) years for a 2007 murder he did not commit. R.

Doc. 1 at 1. Orleans Parish allegedly withheld exculpatory and material information favorable to

Smith Sr. while prosecuting the case in violation of *Brady v. Maryland* and its progeny.[2] *Id.*  A

detailed summary of the factual allegations has been provided in previous orders on the record and

therefore will not be included in this opinion.

---

[1] Smith Sr. died during the course of these proceedings. His son, Kaleigh Smith Jr., has since stepped into the role as Plaintiff. *See.* R. Doc. 44.
[2] 373 U.S. 83 (1963).

The hearing on this matter began on April 22, 2026, and continued on May 8, 2026. OPDA indicated that it narrowed the scope on Request for Production No. 1 to communications and statements Smith's counsel had with witnesses before Smith conviction in February 2010.[3] Although still overlapping a bit, Request for Production No. 2 seeks communication or statements with witnesses listed on Plaintiff's witness list (R. Doc. 57).

During the May 8 2026, hearing, OPDA identified Thomas Walker, who is Cynthia Shezbie's son and who provided a written statement to Smith's trial counsel in the post-conviction proceedings. *See* R. Doc. 79. According to OPDA, Walker's statement contains allegations concerning OPDA, Latasha Horace[4], and law enforcement, which OPDA has obtained a copy. OPDA contends that while it has the actual statement, it is entitled to communications between Smith's counsel and Walker before the statement was formalized.

OPDA also identified a Maryland witness, whose identity was unknown but referred to in the Defendant's motion to continue the trial of the criminal proceeding. According to OPDA, the motion indicates that Smith's counsel located, interviewed, and obtained favorable information from this witness. After the requests were narrowed, the Court required an additional production of documents for *in camera* review to assess whether there is information within the scope of the litigation that adequately responds to the requests.

The Court ordered Plaintiff to submit 1) communications between Plaintiff's state trial counsel and Thomas Walker that discuss the alleged Brady violations in this case, specifically those related to alternate suspects to the murder of Jason Anderson, and 2) OPDA policies or

---

[3] The original request for production sought the entire claim file from every attorney and organization that represented Smith Sr. during his pre-trial, trial or post-conviction. *See* R. Doc. 61. After the initial hearing, OPDA recognized the overbreath nature of the request and then by May 8, 2026, limited the request to witnesses before Smith's Trial that resulted in his conviction.

[4] The OPDA post-conviction state stipulations mention that Latasha Horace, is the decedent's girlfriend.

procedures. If no such communication exists, Plaintiff shall provide a certification to that effect. R. Doc. 78.

Plaintiff was also ordered to provide 1) the identity of the unknown Maryland witness referenced in the state motion to continue submitted on October 27, 2009, and 2) the favorable information provided by that witness to Smith's trial counsel. Having set forth the position of the parties, the Court will now proceed with its review of the Motion.

**II.      Standard of Review**

Federal Rule of Civil Procedure 26(b)(1) sets the scope of discovery to include "any non-privileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) further specifies that "[i]nformation within this scope of discovery need not be admissible in evidence to be discovered." *Id.* Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Rule 34 provides that a party may request the production of "any designated documents or electronically stored information" or "any designated tangible things." Fed. R. Civ. P. 34(a)(1). For each item or category, a "response must . . . state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34 (b)(2)(B).

Rule 37 allows a party to move for an order compelling discovery from another party and provides sanctions for failure to cooperate with discovery. In particular, Rule 37(a)(3)(b)(iii)-(iv) allows a party seeking discovery to move for an order compelling an answer or production of documents where a party "fails to produce documents" or "fails to answer an interrogatory."

3

"[E]vasive or incomplete" production is treated the same as a complete failure to produce. Fed. R. Civ. P. 37(a)(4).

### III.   Analysis

#### A.   RFP No. 1: Communications and statements Smith's counsel had with witnesses before Smith conviction in February 2010.

OPDA originally propounded Request for Production No. 1 for "all documents relating to pre-trial, trial, or post-conviction proceedings in any court concerning Kaliegh Smith's 2010 conviction for second degree murder." R. Doc. 61-1.  Plaintiff opposed the scope of the request, indicating that all documents related to Smith's pre-trial, trial, and post-conviction proceedings were not relevant to the subject matter of this litigation. R. Doc. 61-4 at 2. OPDA then slightly narrowed the requests to communications or documents reflecting statements that witnesses exchanged with Smith's seven trial counsel attorney's[5] before his February 2010 conviction on May 4, 2026.

Under *Brady*, a local government entity, including a district attorney's office, deprives a criminal defendant of his right to due process when it suppresses or withholds evidence that is both favorable to the defendant and material to his defense. *Truvia v. Connick*, 577 Fed. App'x 317, 321–22 (5th Cir. 2014) (*citing* Smith v. Cain, 565 U.S. 73, 75, 132 S. Ct. 627, 630 (2012)). Upon establishing a Brady violation, a plaintiff bringing a Section 1983 claims "must prove that action pursuant to official municipal policy caused their injury." *Connick v. Thompson*, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011)

The work-product doctrine protects documents and tangible things that were prepared in anticipation of litigation or for trial by or for another party or its representative, including the

---

[5] John Unglesby, Orleans Public Defenders, Mark Rochon, Miller Chevalier, the Louisiana Appellate Project, Richard Davis, and Innocence Project. R. Doc. 61-3 at 2.

party's attorney. Fed. R. Civ. P. 26(b)(3)(A). This doctrine particularly provides qualified protection of documents and tangible things including but not limited to a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements. *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir.1991). The work-product doctrine does not protect materials assembled in the ordinary course of business. *Conoco v. Boh Bros. Constr. Co.*, 191 F.R.D. 107, 118 (W.D. La.1998). The party seeking the protection of the work product doctrine has the burden of proving that the documents were prepared in anticipation of litigation. *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir.1978).

Under certain circumstances, documents protected by the work-product doctrine must still be produced. To obtain the production of documents protected by the work-product doctrine, the party seeking discovery must prove why those materials should be produced by establishing: (1) a "substantial need of the materials" in the preparation of the party's case; and (2) an inability "without undue hardship to obtain the substantial equivalent of the material by other means." *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F .2d 1235, 1240 (5th Cir.1982); Fed. R. Civ. P. 26(b)(3)(A)(ii).

Regarding the pretrial and trial documents and statements before Smith's conviction, the Court finds that OPDA's narrowed request remains overly broad and not proportional to the needs of the case. OPDA's request appears aimed at challenging the existence of an underlying *Brady* violation by determining whether Smith or his attorney already knew facts that OPDA allegedly failed to disclose. Notably, Plaintiff's cause of action is focused on the evidence that OPDA failed to disclose to Smith and his counsel during the prosecution of the case. OPDA, however, attempts to discover communications and statements from the entire files of Smith's seven former defense attorneys, which are not proportional to the case.

5

The request here is not limited to communications or statements concerning specific evidence Plaintiff alleges was suppressed. Instead, it necessarily includes communications involving virtually every individual with whom Smith's counsel communicated with during the pretrial and trial criminal proceedings. Further, in OPDA's own words, OPDA states that information in these files *could* demonstrate Smith or any of his attorney's knowledge of facts that he claims were otherwise not disclosed to him. R. Doc. 61-1 at 5. This statement alone confirms that OPDA's request is overly broad and not proportional to the needs of the case. Even assuming that what OPDA seeks could be true, such information is not relevant to the *Brady* violations that are alleged and nor could they assist the OPDA in its defense of the claim. Therefore, the Court finds that request amounts to an impermissible fishing expedition.

The Court further finds that the requests are protected by the work-product doctrine. The requests necessarily include Smith's counsel's notes, summaries, mental impressions, or materials made in preparation for Smith's defense. OPDA has not shown a substantial need for unlimited access to Smith defense counsel's *entire* pre-trial and trial file. OPDA also has not shown that it cannot obtain the information of what Smith's counsel knew during the state criminal proceedings by other means of discovery. *See Crosby*, 647 F.3d 25.

Therefore, the Court sustains the Plaintiff's objections to Request for Production No. 1. No response to this request seeking Smith's pretrial and trial attorneys' files shall be disclosed except as detailed below.

### B. RFP 2 – Communications or statements with witness listed on Plaintiff's witness list

OPDA initially propounded Requests for Production No. 2, seeking all documents evidencing communications (1) between Smith/his counsel or "any other person acting on his

6

behalf and (2) any other person concerning the murder of Jason Anderson; Kaleigh Smith's prosecution, conviction, imprisonment for that crime; Kaliegh Smith's post-conviction proceedings and release; OPDA's policies or practices; or the present lawsuit." R. Doc. 61-3 at 1. OPDA subsequently narrowed the requests to communications or documents reflecting statement by persons listed on Plaintiff's witness list on May 4, 2026. R. Doc. 57.

The Plaintiff objected to the request arguing that the requested documents are protected by the work-product doctrine and are not relevant to this litigation, which involves *Brady/Monell* claims. R. Doc. 61-4 at 3. During the hearing, an issue arose regarding the identity of a Maryland witness, and therefore, the Court ordered Plaintiff to provide documents regarding this witness for *in-camera* review. Another issue arose as to Lance Unglesby, Smith's main trial attorney in the state case. However, the Court found that the vast majority of materials involved were not relevant.

As discussed above, the Plaintiff must first establish an underlying *Brady* violation before OPDA may be held liable under Section 1983 under *Monell*. Therefore, the Court considers whether the disputed witness statements bear on the alleged *Brady* violations, and if so, whether they remained protected from disclosure under the work product doctrine. *See Truvia*, 577 Fed. App'x 317, at 321–22. *Connick*, 131 S. Ct. at 1359.

The documents submitted for *in-camera* review included statements and summaries of statements made by Smith's defense counsel through interviews with several witnesses on Plaintiff's witness list, namely Latasha Horace, Thomas Walker, and Cynthia Shezbie.

**A. Latasha Horace**

Plaintiff provided a summary of statements collected from Smith defense counsel's interviews with Latasha Horace. The Court finds such summaries are directly relevant to Plaintiff's *Brady* claim. Plaintiff does not contend that the defense was unaware of Waton Hughes, the alleged

alternate suspect in the case. Plaintiff contends that Horace talked with "Monster" who is her cousin after the shooting and discussed only that she saw the shooter run off and did not know who the shooter was. Plaintiff alleges on the hand, Horace interviews with law enforcement implicated that 1) she saw someone running away who she suspected to be the killer and 2) gave a description of the person that did not match Smith, which was never disclosed to him or his counsel. *See also* R. Doc. 1, at 7, ¶¶37-39.

Following its in-camera review, the Court finds that Horace's interview statements or summaries of those statements constitute work product because they were prepared by defense counsel in anticipation of the litigation. Nevertheless, OPDA has demonstrated a substantial need for the statement. The statement bears directly on the allegedly suppressed evidence underlying Plaintiff's *Brady* claim and cannot obtained through other means. Therefore, the Court finds such interview statements and summaries of those statements from Latasha Horace are discoverable.

**B.  Thomas Walker**

As to Thomas Walker, Plaintiff contends that Walker's statement is not relevant to Plaintiff's *Brady* claims because it does not discuss the specific *Brady* information at issue, including OPDA's rental payments to Cynthia Shezbie, Latasha Horace, or Casey Collin's identification of Waton Huges as being involved in Anderson's murder. After *in-camera* review, the Court finds that Walker's statement does not specifically identify rental payments or implicate Waton Hughes. However, it does indicate that Shezbie knew the real individual responsible for Anderson's murder but was too afraid to identify him because the police was making her say Smith committed it.

The Court therefore finds this information is indirectly related to the *Brady claim* because it goes to the fact that a third party was the likely cause of Smith's death. Further, while this

information would be generally protected under the work-product doctrine, the Court finds that OPDA has demonstrated a substantial need for the information and is not available through other means. OPDA indicated that they already have a copy of Walker's statement. However, Plaintiff's counsel also attached an email from Nicole Heisser that was sent to Smith's trial counsel. This email should be disclosed to OPDA subject to redaction of non-relevant information including all personal identifiers other than Heiser and Unglesby.

### C. Cynthia Shezbie

As to Shezbie, the Court finds that statements and summaries of interview statements written or obtained by Smith's defense counsel are directly relevant to Plaintiff's *Brady* claim. Plaintiff alleges that Shezbie, OPDA's sole eyewitness at trial, later recanted her testimony during the trial that Smith murdered Anderson. Plaintiff further alleges that OPDA threatened her into testifying against Smith and gave her undisclosed benefits, including rent payments, during the state criminal proceedings. Plaintiff contends that this information was not disclosed until after the conviction and was the subject of Smith's application for post-conviction relief.

Although generally protected under the work-product doctrine, the Court finds that OPDA has shown a substantial need for such statements and summaries of interviews with Shezbie as it bears directly on the claims and defenses in the case. There are also no alternative means of obtaining the information. Therefore, the Court finds that Smith's defense counsel's statements and summaries of interview statements with Cynthia Shezbie are subject to disclosure.

### D. Unknown Maryland Witness

As to the unknown Maryland witness, the Court reviewed the documents provided and found the only relevant information pertaining to the lawsuit is that someone informed this witness that a person with dreadlocks committed the Murder. This witness was not an eyewitness and is

9

not listed on Plaintiff's witness list. Therefore, communications or statements from this witness do not directly bear on the issues in this case and remain protected by the work product doctrine.

IV.    **Conclusion**

Accordingly,

**IT IS ORDERED** that Defendant's **Motion to Compel Production of Documents (R. Doc. 61)** is **GRANTED** in **PART** and **DENIED** in **PART**.

- **IT IS GRANTED** as to compel Plaintiff to respond to Request for Production No. 2. Plaintiff is required to produce communications and documents reflecting statements that were obtained by Smith's state defense counsel as to the following witnesses listed on Plaintiff's exhibit list (R. Doc. 57): Latasha Horace, Thomas Walker, and Cynthia Shezbie. Plaintiff shall do so **no later than seven (7) days from the signing of this order**:

- **IT IS DENIED** as to compel Plaintiff to identify the Maryland witness and provide corresponding communications and statements with this witness in response to Request for Production No. 2.

- **IT IS DENIED** as to compel Plaintiff to respond to Request for Production No. 1.

New Orleans, Louisiana, this 29th day of June 2026.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**